## J. C. LOONEY V. THE STATE.

### No. 4285. Decided November 22, 1916.

#### 1.—Theft—Ownership—Possession—Control—Indictment.

Where, upon trial of theft of property of the value of fifty dollars, the evidence showed that the alleged stolen property consisted of some metal which belonged to a foundry and the ownership was alleged to be in the owner of the

foundry, but the evidence also disclosed that the metal had been severed from the building by certain parties when it was taken by the defendant, the ownership should have been alleged in the parties who severed the metal from the foundry and who were in actual control thereof.

### 2.—Same—Intent—Fraudulent Taking—Consent.

Where, upon trial of theft, the evidence showed that the defendant had the consent of the party who attended to all the business of the alleged owner, to remove the alleged property, and defendant believed that he had the right to take the alleged property, the case is not one of theft, and the court committed reversible error in refusing to permit the defendant to introduce testimony to show this state of facts.

### 3.—Same—Charge of Court—Accomplice.

Where, upon trial of theft, the charge of the court on accomplice testimony was not according to precedent, the same was error.

Appeal from the District Court of Cherokee.  Tried below before the Hon. L. D. Guinn.

Appeal from a conviction of theft of property of and over the value of fifty dollars; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Guinn & Guinn,* for appellant.—On question of implied consent: Miles v. State, 1 Texas Crim. App., 510: Heskew v. State, 17 id., 161, and 18 id., 275.

On question of claim of right:  Maddox v. State, 41 Texas, 205; Roberts v. State, 44 Texas Crim. Rep., 267; Reese v. State, 44 id., 34; Young v. State, 34 id., 290.

On question of possession:  Bailey v. State, 18 Texas Crim. App., 426; Otero v. State, 30 id., 450; Massey v. State, 31 Texas Crim. Rep., 91.

On question of charge on accomplice testimony:  Campbell v. State, 67 Texas Crim. Rep., 302; O'Quinn v. State, 55 Texas Crim. Rep., 18; Hall v. State, 52 id., 250; Snelling v. State, 57 id., 416.

*C. C. McDonald,* Assistant Attorney General, for the State.

DAVIDSON, Judge.—Appellant was convicted of theft of over fifty dollars in value, his punishment being assessed at two years confinement in the penitentiary.

The indictment alleged ownership of the property in H. S. Guinn. The property consisted of copper and other metal that belonged to a foundry.  This copper had been severed from the building by Ross and McPherson, who left it near the building; subsequently it was removed some distance, apparently or really, for the purpose of secreting it.  The State's contention is that appellant assisted in moving the property.  Appellant's theory was that he had nothing to do with the moving of the property from the foundry to where it was subsequently found.  Appellant was informed of the fact that the property had been stolen by the other parties and went in company with Reagan

and carried it to Rusk and shipped it to Tyler, where it was sold. There is no question of the fact that appellant was absent when the property was severed from the building. There is an issue of fact as to whether he assisted in moving the property subsequently to the woods. There is no question of the fact that he and Reagan got a wagon and hauled the stolen property from where they discovered it in the woods to Rusk and appellant shipped it to Tyler. We might stop the case here, perhaps, on the theory that the State has not shown a case of theft by appellant. In order to constitute the taker a thief he must be connected with the original taking. If he fraudulently receives it or conceals it subsequently, he would be a receiver or concealer of the goods as the facts would show. This applies to the ownership in Guinn. Guinn was constructively the owner in that he was the agent of the corporation, or people who owned the foundry. This foundry seems to have been out of business for some time and parties had been ravaging it and taking metal from it for quite a while. There seems to be some question also of Guinn's right to sell. When McPherson and Ross severed the property and appropriated it to their use for the ulterior purpose of selling it, they committed theft of the property. Asportation is not necessary in theft. The fraudulent taking is sufficient without asportation. Their segregation of the property from the building, which took them some hours to accomplish by breaking it, it being part of the machinery of the building, was an appropriation of the property. They removed it from the building and went away intending to go back and ultimately dispose of it, but in the meantime, the State contends, appellant got the property and appropriated it. The question of return of the property by Ross and McPherson is not suggested by the evidence; in fact, the idea of voluntary return on their part is excluded by the testimony. Under this view of the case the property was in possession of the original takers who had deprived Guinn of the property and appropriated it. They had broken it loose from the machinery of the building and became owners of it so far as thieves could be the owners of stolen property. Ownership and possession are usually synonymous terms under our statute. Ownership is constituted by the actual care, control and management of the property. Where a thief has stolen a horse or a cow, or an animal, and it escapes or gets back upon its range, or is turned loose upon its range, the ownership may be then in the owner. This is the general rule, especially where the animal is on its accustomed range or in the neighborhood. If appellant committed theft, it occurs to the writer the ownership should have been alleged in the parties from whom he took the property, Ross and McPherson. These matters were brought to the attention of the court in several ways, by special charges and exceptions to the charge, and in regard to the sufficiency of the evidence.

There is another serious question in the case for which this judgment will have to be reversed. The question of intent became an important factor. Appellant had had conversations with the alleged

owner, Guinn, two or three years prior to this transaction with refer-
ence to buying the property and also with reference to hauling such
property from the foundry. Guinn notified him he would write to the
owner and obtain permission, if he could, and he would employ appel-
lant to haul it or sell it to him. This is the substance of the matter.
When appellant was informed of the fact that this property had been
stolen from the foundry, he went to see Mr. Guinn at his office. Upon
reaching the office another one of the Guinns of the law firm had a
conversation with appellant, or appellant with him. Appellant in-
formed Mr. Guinn of his mission and desired to get this property.
After talking the matter over some time Guinn informed him that he
and one of the other members of the firm often wrote letters for the
alleged owner, H. S. Guinn, and, it may be generally stated, sometimes
assisted in looking after the business for him. It is not intended to
go into the details but rather state the substance. Finally Guinn told
appellant it would be all right, and to get the property, which appellant
did. In order to get this matter perhaps a little clearer we will state
this much from the bill of exceptions: "The court refused to permit
the defendant to testify that Charley Guinn stated to the defendant
that he was the nephew of H. S. Guinn, the prosecuting witness; that
he occupied the same office with said H. S. Guinn, and that said Guinn
was out of town but that he, Charley Guinn, attended to all of his
business and that he would authorize the defendant to go and get the
property alleged to have been stolen, and that he could see H. S. Guinn
about a settlement of the matter later, and that the defendant at the
time he took the property alleged to have been stolen believed said
Charly Guinn had full authority from H. S. Guinn to authorize him,
defendant, to take the alleged stolen property, and that it was because
of said authority given by said Charley Guinn that defendant did take
said property." This is copied from the bill of exceptions, which fol-
lows several pages of questions and answers, retiring of the jury, bring-
ing them back, arguments and discussion of counsel, which it is supposed
was put in to manifest the exact status. The court signs this bill with-
out qualification. It has always been the rule in theft cases that the
taking must be fraudulent, and that the intent is an essential element
on the part of the taker to take and appropriate the property fraudu-
lently. If he had the right to take it or believed he had the right to
take it, the case is not one of theft. This has been so long the rule
in Texas that authorities are not necessary. The statute makes this
so by its definition. If the property comes into the possession of a
party honestly he would not be guilty of theft by afterwards converting
it, under an indictment of this character. To meet this very propo-
sition the Legislature enacted a statute with reference to theft under
a contract of hiring and borrowing by bailee. This is not an indict-
ment of that character; it is an ordinary theft indictment. This is
not only so, but since the defendant can testify in his own case he may
testify as to his intent and connection with the property alleged to

have been stolen, disclaiming any fraudulent purpose. This has been decided in quite a number of cases. He can not only prove it by himself but he can prove it by any testimony that is legitimate. The court seems to have acted upon the theory that this was a conversation between Charley Guinn and defendant, and, therefore, it could not be used in evidence before the jury to show his intent. This is not the law. Mr. Branch has collated a great number of these cases in his work on Criminal Law, in section 799. Not only so, but if he is laboring under a mistake of fact as to his right, this can be shown, and if it is a fact that he made a mistake he still would not be guilty. This is also fixed by the statute. The fact that appellant went to see H. S. Guinn to talk with him about the matter and obtain his permission to take the property, tends to aid him in his contention of the fact that he did talk with Charley Guinn, H. S. Guinn being absent, and obtained, as he believed and as the bill of exceptions shows, his permission to take the property and settle with H. S. Guinn afterwards. This certainly would be strong evidence of the fact that he was not contemplating taking the property without authority. This explains or tends to explain why he went for the property and why he took it. He brought the property into town of Rusk and shipped it from the depot. It laid around at the depot before it was shipped in plain sight of everybody who went about it; some of the property was on the ground and some on the platform or gallery. This is raised by bill of exceptions, as before stated, to the rejection of testimony, and it is also raised in special charges, which were refused. The evidence should have been introduced and the jury instructed affirmatively that if appellant, under the circumstances, did not intend to defraud but took the property, believing he had a right to take it, they should acquit him.

There are some exceptions to the charge on accomplice testimony. The charge is not aptly drawn and is subject to criticism. Upon another trial, however, this will not occur. Charges on accomplice testimony have been written about so much that it is well enough for the trial courts to follow those cases that have been adhered to by this court. in which the rule in regard to proper charge on this matter has been settled.

For the reasons indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*

HARPER, JUDGE, absent.