**NAUTILUS INSURANCE COMPANY,**
**Appellant,**

v.

**Frances STEINBERG and Morton**
**Rudberg, Appellees.**

No. 05–08–01418–CV.

Court of Appeals of Texas,
Dallas.

July 2, 2010.

Rehearing Overruled Aug. 16, 2010.

John C. Tollefson, Stephen A. Melendi, Tollefson, Bradley, Ball & Mitchell, L.L.P., Beth D. Bradley, Thompson, Coe, Cousins & Irons, L.L.P., Dallas, for appellant.

Morton A. Rudberg, Dallas, for appellees.

Before Justices MORRIS, MURPHY, and FILLMORE.

## OPINION

Opinion by Justice MORRIS.

This appeal follows a trial before the court without a jury. Central to the appeal is the meaning of the word "theft" as used in an insurance policy that excludes "damage caused by or resulting from theft." After reviewing the record, we conclude the trial court erred in its construction of the policy and its application of the law to the facts of this case. We further conclude that, because of its incorrect construction of the policy and application of the law, the trial court failed to make a necessary fact finding. We reverse the trial court's judgment and remand the cause for further proceedings.

## I.

Appellees Frances Steinberg and Morton Rudberg were the insured parties under a commercial property insurance policy issued by Nautilus Insurance Company. The policy covered a building owned by appellees located in Dallas, Texas. Among the policy's provisions was coverage for "vandalism," which was defined as "willful and malicious damage to, or destruction of, the described property." The vandalism coverage provision also contained a "theft" exclusion, which stated:

We will not pay for loss or damage caused by or resulting from theft, except for building damage caused by the breaking in or exiting of burglars.

On March 26, 2007, Leonard Dwayne Heard climbed onto the roof of appellees' building, opened up the air conditioning units located there, and removed copper pipes and electrical wiring. While he was still on the roof, Heard was found and arrested by Dallas police officers. The arresting officer listed theft as the offense on the incident report. Heard was indicted, however, for felony criminal mischief. He pleaded guilty to and was convicted of that offense.

Appellees notified Nautilus of the damage done to their property and the company assigned a claim investigator. On April 17, 2007, Nautilus sent a letter to appellees informing them that their claim had been denied because there was no coverage under the policy for "theft." The denial was reaffirmed by a second letter on May 2 after appellees sent Nautilus a sworn proof of loss.

Appellees brought this suit against Nautilus seeking to recover the amount they alleged was owed under the policy, statutory penalties, attorney's fees, and costs along with prejudgment and post-judgment interest. A trial was held before the court at which the parties stipulated to the above facts. The trial court also admitted documentary evidence including an affidavit from the records of the Dallas Police Department. According to the affidavit, the arresting officer observed that Heard had removed fourteen or fifteen copper pipes from the air conditioning units attached to appellees' building and left the pipes lying on the roof.

After reviewing the evidence, the trial court concluded Nautilus failed to show that the exclusion applied to bar coverage. In its findings of fact, the trial court focused on the fact that Heard never removed the copper pipes from the roof of the building. The court also concluded that the air conditioning units were not personal property and Nautilus failed to prove Heard "took any personal property" from appellees. Finally, the trial court stated that Nautilus "failed to prove from a preponderance of the evidence that there was a theft of the copper pipe removed from the air conditioning units." The trial court awarded appellees the stipulated amount of actual damages along with statutory penalties, attorney's fees, and interest. Nautilus then brought this appeal.

## II.

In its first two issues on appeal, Nautilus contends the trial court erred in construing the policy in such a manner as to conclude that the theft exclusion did not apply. Nautilus has conceded, both in the trial court and on appeal, that appellees met their initial burden of proving that their loss resulted from "willful and malicious damage to, or destruction of, the described property." *See Federated Mut. Ins. Co. v. Grapevine Excavation Inc.*, 197 F.3d 720, 723 (5th Cir.1999) (insured bears initial burden to show claim falls within scope of coverage). In other words, Nautilus does not challenge the fact that appellees proved the damage caused by Heard

fell within the scope of the policy's coverage for "vandalism." Nautilus contends only that the trial court erred in concluding that Nautilus failed to meet its burden to show the theft exclusion applied to bar coverage. *See id.* (once insured proves coverage, burden shifts to insurer to prove exclusion applies).

■ We review the trial court's construction of an insurance contract de novo. *See Harrison v. Great Am. Assur. Co.,* 227 S.W.3d 890, 892 (Tex.App.-Dallas 2007, no pet.). Neither side contends the language of the exclusion is ambiguous, and we agree it is not. Accordingly, we must enforce the language to which the parties agreed and not alter it under the guise of construction. *See Fiess v. State Farm Lloyds,* 202 S.W.3d 744, 753 (Tex.2006). The insurer bears the burden of pleading and proving by a preponderance of the evidence that a policy exclusion applies to bar coverage. *See Nobles v. Emps. Ret. Sys.,* 53 S.W.3d 483, 486 (Tex.App.-Austin 2001, no pet.).

■ The relevant exclusion here states that Nautilus will not pay for losses or damage caused by or resulting from "theft." The term "theft" is not defined in the policy. In general, when a term in an insurance policy is not defined, we consider the ordinary, everyday meaning of the word. *See Progressive Cnty. Mut. Ins. Co. v. Sink,* 107 S.W.3d 547, 552 (Tex. 2003). In the case of the word "theft," however, the Texas Supreme Court has held that the term is to be given the same meaning in an insurance policy that it has under criminal law. *See Hudiburg Chevrolet, Inc. v. Globe Indem. Co.,* 394 S.W.2d 792, 795 (Tex.1965).

■ The Texas Penal Code states that a person commits theft when he "unlawfully appropriates property with intent to deprive the owner of property." *See* TEX.

PENAL CODE ANN. § 31.03(a) (Vernon Supp. 2009). To "appropriate" property, a person must "acquire or exercise control over property other than real property." *See id.* § 31.01(4). And to "deprive" the owner of property, a person must "withhold property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner," or "restore property only upon payment of reward or other compensation," or "dispose of property in a manner that makes recovery of the property by the owner unlikely." *See id.* § 31.01(2). The term "property" is defined to include "tangible or intangible personal property including anything severed from land." *See id.* § 31.01(5). For the theft exclusion to apply, therefore, Nautilus was required to show, by a preponderance of the evidence, that Heard exercised control over appellees' personal property with the intention of depriving them of the property's possession, enjoyment, or use.

■ The undisputed evidence in this case shows that Heard removed copper pipes from the air conditioning units located on the roof of appellees' building. The evidence also shows that both Heard and the pipes were still on the roof when Heard was apprehended by the police. During the trial, the judge specifically indicated she believed the property allegedly being stolen had to be removed from the premises for a theft to occur. This belief is reflected in the trial court's findings of fact wherein the court specifically found that there was no evidence the copper pipes were removed from the roof of the building. The trial court's construction of the term "theft" to require the property be removed from the premises does not comport with Texas law.

■ To show theft under Texas law, it is not necessary to establish that the

property was removed or carried away from the premises. *See Hill v. State,* 633 S.W.2d 520, 521 (Tex.Crim.App.1982). Any removal of the property, no matter how slight, from its customary location is sufficient to show control over the property for purposes of theft. *See Baker v. State,* 511 S.W.2d 272 (Tex.Crim.App. 1974); *Commercial Cas. Ins. Co. v. Goode,* 135 S.W.2d 816, 818 (Tex.Civ.App.Galveston, 1940, writ dism'd). The undisputed evidence here shows that Heard removed the copper pipes from the air conditioning units. The act of removing the pipes was sufficient to show control over the property for purposes of theft. *See Edwards v. State,* 440 S.W.2d 648, 649 (Tex.Crim.App. 1969). To the extent the trial court concluded the policy's theft exclusion did not apply because Heard did not exercise control over the property, its conclusion was wrong.

■ The trial court's findings of fact and conclusions of law also indicate the court concluded the copper pipes were not "personal property" because they were originally affixed to the building. This conclusion is also wrong. Once the copper pipes were separated from the building, they became property that could be stolen. *See id.; Looney v. State,* 80 Tex.Crim. 317, 189 S.W. 954, 955 (1916). That the pipes were originally part of a fixture does not prevent them from being subject to theft. *See Farris v. State,* 69 S.W. 140, 141 (Tex. Crim.App.1902).

■ Based on the foregoing, it is clear that Heard exercised control over appellees' personal property as defined by Texas criminal law and, by extension, the insurance policy at issue. But this alone is not sufficient to show that a theft occurred. It was also Nautilus's burden to show, by a preponderance of the evidence, that Heard had the intent to deprive appellees of the property's possession, enjoyment, or use.

Unlike the other elements of theft at issue in this case, the trial court made no express finding on the element of intent. The findings of fact and conclusions of law show that the trial court's judgment was based upon an application of the term "theft" that erroneously required removing from the premises property that was never attached to the building. Because the court's findings of fact and conclusions of law show the trial court's judgment was based on an incorrect construction of the contract and interpretation of the law, we cannot imply a finding of intent to support the judgment. *See Jones v. Smith,* 291 S.W.3d 549, 553 (Tex.App.-Houston [14th Dist.] 2009, no pet.).

Although we cannot imply a finding of intent, Nautilus contends that appellees conceded the intent issue in their answers to interrogatories. In its first set of interrogatories to appellees, Nautilus asked them to detail all information "regarding the manner in which [the copper] items were removed from [the] premises." Appellees responded that they were not present when the police officers removed the property from the roof, but they were told that an individual had "vandalized the air conditioning units" by "removing the copper portions probably to sell [or] to buy dope." This statement is not a concession of Heard's intent but merely a recitation of what appellees were told by the police.

Furthermore, the evidence does not establish Heard's intent to commit theft as a matter of law. Indeed, a review of the record shows that the trial judge considered the evidence of intent to be "speculative." The parties did not stipulate to Heard's intent in removing the copper pipes from the air conditioning units. And, absent a stipulation by the parties on the issue, it was within the province of the

trial court, as the trier of fact, to determine whether Nautilus had proven intent by a preponderance of the evidence. *See Davis v. State,* 904 S.W.2d 946, 950–51 (Tex.App.-Austin 1995, no writ) (findings of fact may be compelled by stipulated facts that are evidentiary in nature). Intent is a question of fact to be determined by the trier of fact from all of the surrounding circumstances. *See Smith v. State,* 965 S.W.2d 509, 518 (Tex.Crim.App. 1998).

█ The stipulated facts show that Heard was found on the roof of appellees' building. The arresting officer stated that Heard "had removed fourteen to fifteen two foot copper pipes and left them laying next to the units." The police believed Heard intended to take the copper pipes and sell them. Heard was not charged with theft, however. He was charged with and indicted for criminal mischief, a crime that, in essence, describes vandalism. A person commits criminal mischief if he intentionally or knowingly damages or destroys the tangible property of the owner. *See* TEX. PENAL CODE ANN. § 28.03(a). The offense of criminal mischief does not include the element of intent to deprive the owner of the property. *Id.*

As the parties stipulated, Heard entered into a plea agreement under which he confessed, pleaded guilty to, and was convicted of criminal mischief. Heard's judicial confession states that he intentionally and knowingly damaged and destroyed appellees' tangible property without their consent. Heard never stated, however, that he destroyed appellees' property with the intent to deprive appellees of its possession, enjoyment, or use. At most, Heard's statement is a confession to vandalism only. He did not confess to theft.

In response to Nautilus's argument, appellees contend Heard's intent is not dispositive of the entire coverage issue because, even if Heard intended to commit theft and the allegedly stolen property was excluded from coverage, the policy should be construed to cover the damage to the building. Appellees rely heavily on the Texas Supreme Court case of *U.S. Fid. & Guar. Co. v. Bimco Iron & Metal Corp.,* 464 S.W.2d 353 (Tex.1971). As recent cases have noted, however, the policy language addressed in *Bimco* is significantly different from the current policy language at issue here. *See Certain Underwriters at Lloyds, London v. Law,* 570 F.3d 574, 578 n. 11 (5th Cir.2009); *Essex Ins. Co. v. Eldridge Land, L.L.C.,* 14–09–00619–CV, 2010 WL 1992833, at *4 (Tex.App.-Houston [14th Dist.] May 20, 2010, no pet. h.). The current policy language unambiguously excludes from coverage all damages caused by or resulting from theft.[1] *See Law,* 570 F.3d at 579. All of the property damage in this case was caused by or resulted from Heard's removal of the copper components from the air conditioning units. If Heard's intent was to steal the copper, then all of the property damage claimed by appellees falls squarely within the theft exclusion to coverage.

The trial court failed to make a finding on the element of intent because it erroneously construed the term "theft" in appellees' policy to require property be taken off the premises. The trial court also erred in concluding the theft exclusion did not apply if the property stolen was originally part of the building. Because the trial court erred in its construction and application of the policy language, we resolve Nautilus's first two issues in its fa-

---

1. Appellees do not argue that the exception to the exclusion for "building damage caused by the breaking in or exiting of burglars" applies

in this case. In their brief on appeal, appellees explicitly state "[t]here was no breaking or entering of the insured building itself."

vor. This conclusion renders it unnecessary for us to address Nautilus's other arguments.

As stated above, the issue of coverage in this case ultimately hinges on the determination of Heard's intent. Intent is a question of fact uniquely within the realm of the trier of fact. *See Spoljaric v. Percival Tours, Inc.,* 708 S.W.2d 432, 434 (Tex. 1986); *Robles v. State,* 664 S.W.2d 91, 94 (Tex.Crim.App.1984). The trial court, however, did not make a finding on the element of intent that would control the case under the correct construction of the policy and interpretation of the law. *See Jones,* 291 S.W.3d at 555. We therefore reverse the trial court's judgment and remand the cause for further proceedings.