

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-19-00398-CR

---

**JOSEPH DEWAYNE ELLIOTT, APPELLANT**

**V.**

**THE STATE OF TEXAS**

---

On Appeal from the County Court at Law No. 1
Potter County, Texas,
Trial Court No. CCCR-18-2323-1, Honorable Walton Weaver, Presiding

---

October 6, 2020

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

A jury convicted appellant, Joseph Dewayne Elliott, of the Class B misdemeanor offense of theft of property valued between $100 and $750.[1] Pursuant to an agreement between the parties regarding punishment, the trial court sentenced appellant to 60 days' confinement in the Potter County jail, probated for one year, a $1,000 fine, and court

---

[1] *See* TEX. PENAL CODE ANN. § 31.03(a)(e)(2)(A) (West 2019).

costs. Through two issues, appellant challenges the sufficiency of the evidence to support his conviction. We affirm the judgment of the trial court.

## Background

On October 13, 2018, appellant was arrested for theft of property at a Walmart store in Amarillo. Store surveillance cameras recorded appellant's behavior in the self-checkout area and his detention by the loss prevention officer.

A misdemeanor information was filed charging appellant with theft. Appellant pled not guilty and the matter proceeded to a jury trial.

At the trial, Sherri Degler, a loss prevention officer for Walmart, testified that she observed a customer, later identified as appellant, with a shopping cart full of merchandise. In the self-checkout area, Degler saw appellant selectively scan merchandise that was in his shopping cart. Appellant removed some of the merchandise from his cart as if he were going to scan it, but instead of scanning those items, he put the items in the same bag as scanned items. In other instances, appellant did not point the barcode at the scanner or place it close enough to be scanned. Some merchandise was never removed from appellant's cart to be scanned. Approximately half of the items in appellant's cart were not scanned. Degler described appellant's actions at the self-checkout area as common techniques used by shoplifters at Walmart.

After paying for some of the merchandise, appellant pushed his cart past all points of sale and proceeded to the exit of the store. Degler waited until appellant entered the vestibule—an area between Walmart's inner and outer doors—before she introduced

2

herself and explained why she was stopping him. Although appellant did not exit the store, he passed all the registers and the gate where the sensors are located. According to Degler, Walmart policy considers the gate the "last point of sale" for the store.

Appellant agreed to accompany Degler to the store's asset protection office, where she looked at his receipt and each item in the shopping cart to determine what had been paid for and what had not. After comparing the items in the cart and the items on the receipt, Degler determined that appellant had ten items of unpaid merchandise in his possession. A Walmart customer service manager obtained the value of the merchandise that was not scanned and generated a receipt. The State introduced that receipt into evidence showing that there were ten items in the cart that appellant did not pay for, totaling $192.20.

Based on her training and experience, Degler testified that appellant's actions showed that he intended to steal the items. According to Degler, appellant did not intend to scan all the merchandise, "so when he walked away, he knew that there [were] items that were not paid for."

Degler's testimony about the incident was confirmed by store surveillance video which was introduced into evidence at trial.

Appellant testified in his own defense. On the day the offense occurred, appellant intended to return a cell phone to Walmart. After he completed his shopping, appellant went through the self-check lane. After scanning some of the items, he did not scan other items "because [he] had another transaction to do." He testified that he "needed to keep about $100 in merchandise so that [he] could trade that cell phone and not be stuck with

3

a Walmart [gift] card." Appellant produced a receipt reflecting the merchandise he paid for, totaling $83. He further testified, "What I paid for, I put in sacks. What I didn't pay for, I left in the cart. And I knew what needed to be rang up."

Appellant testified that Degler stopped him after he crossed the threshold of the first set of exit doors and asked for his receipt. He gave her the receipt and explained, "I'm supposed to get some phones from my son. I'm fixing to do an exchange. If you got any questions, we can start at the register doing the exchange, and I'll give you the phones and we'll counteract the deal." Appellant acknowledged that he crossed the threshold into the vestibule area, but he maintained that no theft occurred because he was still in the store.

The jury found appellant guilty of the offense of theft. After the parties reached an agreement concerning appellant's punishment, the trial court sentenced appellant to 60 days' confinement in the county jail probated for one year, a $1,000 fine, and court costs. Appellant timely filed this appeal. By his appeal, appellant raises two issues challenging the sufficiency of the evidence to support his conviction.

## Standard of Review

The standard we apply in determining whether the evidence is sufficient to support a conviction is the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Under that standard, we consider all the evidence in the light most favorable to the verdict and determine whether, based on the evidence and reasonable inferences therefrom, a rational trier of fact could have found the essential elements of the offense

4

beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Queeman v. State,* 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). Sufficiency of the evidence is measured against the elements of the offense as defined by a hypothetically correct jury charge. *Thomas v. State,* 444 S.W.3d 4, 8 (Tex. Crim. App. 2014) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). In our review, we must evaluate all the evidence in the record, both direct and circumstantial, regardless of whether that evidence was properly or improperly admitted. *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). The jury, as sole judge of the witnesses' credibility and the weight to be given their testimony, is free to accept or reject any or all evidence presented by either side. *Wilkerson v. State*, 881 S.W.2d 321, 324 (Tex. Crim. App. 1994) (en banc).

## Law and Analysis

### Offense of Theft

To establish the offense of theft, the State was required to prove, beyond a reasonable doubt, appellant (1) unlawfully appropriated property (2) with the intent to deprive the owner of it. TEX. PENAL CODE ANN. § 31.03(a); *see Byrd v. State*, 336 S.W.3d 242, 250 (Tex. Crim. App. 2011) ("[T]he gravamen of theft is in *depriving the true owner of the use, benefit, enjoyment or value of his property*, without his consent." (citation omitted, italics in original)). To appropriate means to acquire or exercise control over property. *Id.* § 31.01(4)(B) (West 2019). An appropriation is unlawful if it is without the owner's effective consent. *Id.* § 31.03(b)(1). "Any removal of the property, no matter how slight, from its customary location is sufficient to show control over the property for

5

purposes of theft." *Nautilus Ins. Co. v. Steinberg*, 316 S.W.3d 752, 756 (Tex. App.—Dallas 2010, pet. denied). Intent to deprive is determined from the words and acts of the accused and must exist at the time of the taking. *Griffin v. State*, 614 S.W.2d 155, 159 (Tex. Crim. App. [Panel Op.] 1981). Proof of a mental state almost always depends upon circumstantial evidence. *Sadler v. State*, 728 S.W.2d 829, 831 (Tex. App.—Dallas 1987, no pet.) (op. on reh'g). The jury may infer intent from the acts, words, and conduct of the accused. *Dues v. State*, 634 S.W.2d 304, 305 (Tex. Crim. App. [Panel Op.] 1982).

Unlawfully Appropriated Property

In his first issue, appellant argues that there was no "meaningful" unlawful appropriation because he did not exit the building with any Walmart property. Appellant points to his "premature detention" by the loss prevention officer to support his position.

Contrary to appellant's argument, "[t]o show theft under Texas law, it is not necessary to establish that the property was removed or carried away from the premises." *Nautilus Ins. Co.,* 316 S.W.3d at 755-56. "Any removal of the property, no matter how slight, from its customary location is sufficient to show control over the property for purposes of theft." *Id.* at 756. "[I]t is not essential that the property be taken off the premises; it is instead only essential that the evidence show an 'exercise of control over the property,' coupled with an 'intent to deprive the owner of the property.'" *Hill v. State,* 633 S.W.2d 520, 521 (Tex. Crim. App. 1981). Asportation—the act of carrying away or removing property from the owner's premises—is not an element of statutory theft. *Hawkins v. State*, 214 S.W.3d 668, 670 (Tex. App.—Waco 2007, no pet.).

The jury heard from Sherri Degler, a Walmart loss prevention officer, and viewed the store's surveillance footage showing appellant's activities in the self-checkout area of the store and the vestibule area where Degler stopped appellant. The evidence showed that appellant removed merchandise from the store shelves, placed the items in his cart, and engaged in deception at the self-checkout area. Degler testified that appellant exercised control over Walmart's property by concealing it in his cart at the self-checkout area, by pretending to scan some of the items in his cart, by positioning the barcode toward the ceiling instead of near the scanner, by failing to remove items from the cart to be scanned, and by placing unscanned merchandise in the plastic bags with scanned items. By intermingling and concealing the merchandise in this fashion, he exercised control over the Walmart property. After paying for some of the items at the self-checkout, appellant claims he went to the customer service area before pushing his cart past the final point-of-sale without paying for the unscanned items. Notably, when asked why he did not leave the unscanned items at customer service, appellant testified that the items "[were] in my *possession. I was taking responsibility [for the unscanned items]*." When Degler stopped appellant, he was in possession of merchandise from the store, for which he had not paid, and he was "past everywhere he could have paid for merchandise." No one from Walmart gave appellant consent to leave the store without paying for all the merchandise in his cart.

We conclude that the evidence is sufficient to support the jury's finding that appellant exercised control over Walmart's property without Walmart's effective consent. *Baker v. State*, 511 S.W.2d 272, 272 (Tex. Crim. App. 1974) ("[W]here the evidence shows there was a reduction of the property to the control and manual possession of the

7

defendant, removal of the property from the premises is not necessary for commission of the offense of theft."); *Willis-Webb v. State*, No. 01-15-00727-CR, 2016 Tex. App. LEXIS 11640, at *11-12 (Tex. App.—Houston [1st Dist.] Oct. 27, 2016, pet. ref'd) (mem. op., not designated for publication) (evidence was sufficient to show theft from Walmart when defendant stopped with unpaid-for merchandise inside vestibule of store).

Intent to Deprive the Owner

In his second argument, appellant contends that the evidence was insufficient to prove his intent to deprive Walmart of its property because he never left the store premises. In support of this contention, he points to evidence that he intended to exchange previously purchased cell phones for the unpaid items.

We have previously explained in our analysis of issue one that appellant was not required to remove the property from the store to complete the commission of theft. And, while the jury heard evidence that appellant intended to exchange previously purchased cell phones for the unscanned items, this is not conclusive evidence that he lacked intent. Although appellant gave this explanation, the jury did not have to believe it. *Wilkerson*, 881 S.W.2d at 324. The jury also heard testimony from Degler that appellant's actions at the self-checkout showed that he intended to steal the unscanned items. *Banks v. State*, 471 S.W.2d 811, 812 (Tex. Crim. App. 1971) (intent is determined from the words, acts, and conduct of the accused). In the face of his admittedly deceptive actions, the jury was not required to accept appellant's assertions that he intended to exchange items purchased previously and pay for the items that remained in his cart. Appellant had the opportunity to pay for *all* the items in his cart at the self-checkout area and he did not do

8

so. Degler testified that failing to scan one or two items might be an "accident" but attempting to leave the store with a cart containing ten items for which he had not paid is evidence of an intent to steal. *State v. Ford,* 537 S.W.3d 19, 24 (Tex. Crim. App. 2017) (customer "can exercise control over property with an intent to deprive, even if the customer has not yet left the store with the property.").

Having reviewed the evidence in the light most favorable to the judgment, we conclude the jury could have rationally found beyond a reasonable doubt that appellant intended to deprive Walmart of its property. We overrule issue two.

Conclusion

Having overruled both of appellant's issues, we affirm the trial court's judgment.

Judy C. Parker
Justice

Do not publish.

9