**SA–OMAX 2007, L.P., Appellant**

v.

**CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, Appellee.**

No. 05–11–00739–CV.

Court of Appeals of Texas, Dallas.

July 3, 2012.

John L. Hubble, Hubble Pistorius, Law Offices of Harvey G. Joseph, Dallas, TX, for Appellant.

Kristine Marie Sorenson, Stephen O. Venable, Walter Wilcox Matousek, LP, Houston, TX, for Appellee.

Before Justices MORRIS, MOSELEY, and MYERS.

## OPINION

Opinion By Justice MYERS.

SA–OMAX 2007, L.P. appeals the trial court's judgment that it take nothing on its claims against Certain Underwriters at Lloyd's, London (Underwriters). Appellant brings two issues contending the trial court erred by (1) denying appellant's motion for summary judgment and (2) granting Underwriters' motion for summary judgment. The issue in this case is whether an insurance policy's sublimit of liability for "theft" applied to damage to a building caused by thieves while committing theft. We affirm the trial court's judgment.

## BACKGROUND

Appellant owned a building and had it insured with Underwriters. Appellant's insurance policy with Underwriters covered direct physical loss or damage "caused by or resulting from any Covered Cause of Loss." To determine what is a "Covered Cause of Loss," the policy states, "See applicable Cause of Loss Form as shown in the Declarations." The declarations page states under "Coverages Provided" that the limit of insurance on the building is $1,237,461. The declarations page also states there is coverage for "Theft" but with a "Sublimit" of $25,000.[1] The policy also provides, "The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations."

---

1. A "sublimit" of coverage is a limitation of liability for certain types of losses to an amount less than the limit of liability otherwise provided by the policy. *See Doctors Hosp.1997 LP v. Beazley Ins.,* No. H–08–3340, 2009 WL 3719482, at *9–11 & n. 6 (S.D.Tex. Nov. 3, 2009).

In June 2010, a person or persons unknown went onto the roof of the building and stole copper pipes and wiring from five HVAC units on the roof of the building. In removing the pipes and wiring, the thieves cut holes in the roof. The roof sustained further damage as the thieves dragged the copper coils across the roof. The interior of the building then suffered damage from rain entering through the holes in the roof. Appellant's total loss exceeded $80,000. Appellant applied to Underwriters for coverage for the stolen property and the damage to the building. Underwriters concluded that both the stolen property and the damage to the building were subject to the $25,000 sublimit for theft. Underwriters paid appellant $25,000 and denied the claim for coverage to the extent it exceeded $25,000.

Appellant sued Underwriters for breach of contract, violations of the Texas Insurance Code, and breach of the duty of good faith and fair dealing. Both sides moved for summary judgment on the issue of whether the damage to the building from the theft was subject to the $25,000 sublimit for theft. The trial court granted Underwriters' motion for summary judgment, denied appellant's motion, and rendered judgment that appellant take nothing on its claims.

## SUMMARY JUDGMENT

The standard for reviewing a traditional summary judgment is well established. *See Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); *McAfee, Inc. v. Agilysys, Inc.*, 316 S.W.3d 820, 825 (Tex.App.-Dallas 2010, no pet.). The movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c). In deciding whether a disputed material fact issue exists precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *Nixon*, 690 S.W.2d at 549; *In re Estate of Berry*, 280 S.W.3d 478, 480 (Tex.App.-Dallas 2009, no pet.). Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex.2005). We review a summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *Dickey v. Club Corp.*, 12 S.W.3d 172, 175 (Tex.App.-Dallas 2000, pet. denied).

When, as here, both parties move for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law. *Guynes v. Galveston Cnty.*, 861 S.W.2d 861, 862 (Tex.1993); *Howard v. INA Cnty. Mut. Ins. Co.*, 933 S.W.2d 212, 216 (Tex. App.-Dallas 1996, writ denied). Neither party can prevail because of the other's failure to discharge its burden. *Howard*, 933 S.W.2d at 216. When both parties move for summary judgment, we consider all the evidence accompanying both motions in determining whether to grant either party's motion. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex.2000). When the trial court grants one motion and denies the other, the reviewing court should determine all questions presented. *Id.* The reviewing court should render the judgment that the trial court should have rendered. *Id.* When a trial court's order granting summary judgment does not specify the grounds relied upon, the reviewing court must affirm the summary judgment if any of the summary judgment grounds are meritorious. *Id.*

## INSURANCE POLICIES

When interpreting an insurance policy, courts apply the general rules of contract construction to ascertain the par-

ties' intent. *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London,* 327 S.W.3d 118, 126 (Tex.2010); *TIG Ins. Co. v. N. Am. Van Lines, Inc.,* 170 S.W.3d 264, 268 (Tex.App.-Dallas 2005, no pet.). Our primary goal is to give effect to the parties' intent as expressed in the written contract. *Gilbert Tex. Constr.,* 327 S.W.3d at 126; *U.S. Fire Ins. Co. v. Scottsdale Ins. Co.,* 264 S.W.3d 160, 167 (Tex.App.-Dallas 2008, no pet.). We read all parts of the policy together, striving to give meaning to all portions while avoiding rendering any portion inoperative. *Gilbert Tex. Constr.,* 327 S.W.3d at 126; *U.S. Fire Ins. Co.,* 264 S.W.3d at 167. Each part of the contract should be given effect, but "[n]o one phrase, sentence, or section [of a contract] should be isolated from its setting and considered apart from the other provisions." *Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 134 (Tex.1994) (quoting *Guardian Trust Co. v. Bauereisen,* 132 Tex. 396, 121 S.W.2d 579, 583 (1938)).

 If the insurance contract can be given an exact or certain legal interpretation, then it is not ambiguous, and we must interpret the insurance policy's meaning and intent from its four corners. *TIG Ins. Co.,* 170 S.W.3d at 268. Parol evidence is not admissible to create an ambiguity, but the contract may be read in light of surrounding circumstances to determine whether an ambiguity exists. *Balandran v. Safeco Ins. of Am.,* 972 S.W.2d 738, 741 (Tex.1998); *U.S. Fire Ins. Co.,* 264 S.W.3d at 167. If, after applying these rules, an insurance policy is subject to two or more reasonable interpretations, it is ambiguous. *Balandran,* 972 S.W.2d at 741; *U.S. Fire Ins. Co.,* 264 S.W.3d at 167. When the ambiguity is in an exclusion from coverage, we "must adopt the construction ... urged by the insured as long as that construction is not unreasonable, even if the construction urged by the in-

surer appears to be more reasonable or a more accurate reflection of the parties' intent." *Balandran,* 972 S.W.2d at 741 (quoting *Nat'l Union Fire Ins. Co. v. Hudson Energy Co.,* 811 S.W.2d 552, 555 (Tex. 1991)).

## ANALYSIS

Appellant argues that the theft sublimit is a limit only as to the value of the items stolen and does not limit coverage for any damage to the building caused by the thieves during the commission of the theft. Thus, appellant argues, because the thieves did not steal the roof, the damage they caused to the roof is not subject to the $25,000 theft sublimit. Appellant argues that if Underwriters had intended to limit its liability to $25,000 for incidental damage caused by thieves in the course of stealing property, then the policy would have stated, "A $25,000 Sub Limit Applies to Theft and Any Damage Caused by or Resulting from Theft." Appellant asserts this is not stated in the policy.

Underwriters argues that the policy does state that the $25,000 sublimit applies to theft and any damage caused by or resulting from theft. The policy provides coverage "for direct physical loss or damage to Covered Property ... caused by or resulting from any covered Cause of Loss." The building is the covered property, and the covered cause of loss is theft. Thus, the policy provides coverage for direct physical loss or damage to the building caused by or resulting from theft. The policy then provides, "The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations." The declarations page states the applicable limit of insurance for "theft" is $25,000. Underwriters argues these provisions, when read together, state that the most Underwriters will pay for "any direct physical loss of or

damage" to the building "caused by or resulting from" a single occurrence of theft is $25,000.

 Appellant argues that Underwriters' construction of these provisions conflicts with other provisions in the policy. Appellant points to a policy provision stating,

> We will not pay for loss or damage caused directly or indirectly by any of the following.... Dishonest or criminal act by you, any of your ... employees.... This exclusion does not apply to acts of destruction by your employees (including leased employees); but theft by employees (including leased employees) is not covered.

Appellant asserts this provision means "theft by an employee is specifically excluded from coverage, however, destruction or damages caused by an employee or resulting from an employee's theft is covered." We disagree. The policy states that "loss or damage caused directly or indirectly" by employees' "acts of destruction" is covered, but "loss or damage caused directly or indirectly" by theft by employees is not covered. Contrary to appellant's argument, the provision does not state that incidental loss or damage (other than the value of the items stolen) caused by employees in the course of committing theft is covered. This provision is not in conflict with Underwriters' interpretation of the policy. *See Nautilus Ins. Co. v. Steinberg*, 316 S.W.3d 752, 757 (Tex. App.-Dallas 2010, pet. denied).[2]

Appellant also points to the following provision as conflicting with Underwriters' interpretation of the policy:

> 1. We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section....
>
> ....
>
> d. Building materials and supplies not attached as part of the building or structure, caused by or resulting from theft.

Appellant argues this provision "clearly articulates the distinction between stolen covered property (building materials) and loss or damage that is a consequence of the theft of the stolen building material."[3]

---

2. In *Nautilus*, Leonard Heard was caught in the act of stealing copper pipes from air conditioning units on a building. All the property was recovered, but the thief's actions caused damage. The policy provided coverage for vandalism but excluded "loss or damage caused by or resulting from theft." *Nautilus*, 316 S.W.3d at 754. The trial court concluded the theft exclusion did not apply because the pipes were not removed from the premises. *Id.* at 755. This Court concluded that theft did not require removal of the property from the premises, but the evidence did not conclusively establish the thief's intent to steal, and we remanded the cause for further proceedings. *Id.* at 756–57, 758. However, we observed,

> The current policy language unambiguously excludes from coverage all damages caused by or resulting from theft. All of the property damage in this case was caused by or resulted from Heard's removal of copper components from the air conditioning units. If Heard's intent was to steal the copper, then all of the property damage claimed by [the building owner] falls squarely within the theft exclusion.

*Id.* at 757 (citation omitted). Similar to the policy in *Nautilus*, the policy in this case provides coverage for loss or damage caused by employees' "acts of destruction," i.e., vandalism, but excludes "loss or damage caused directly or indirectly by ... theft by employees." Applying our statement in *Nautilus*, all the property damage caused by employees in committing theft "falls squarely within the theft exclusion."

3. The first problem with appellant's statement is that the building materials are not "covered property" under this provision; the loss or

Appellant is correct that, under a particular set of facts, the two sentences of paragraph 1 would distinguish between stolen building materials and loss or damage resulting from the theft of building materials; however, the provision is broader than that. Building materials do not have to be stolen for this provision to apply. The first sentence would apply if either (a) the building materials themselves were stolen or (b) the building materials were lost or damaged as a result of the theft of something else. The second sentence, "we will not pay for any loss that is a consequence of loss or damage" to building materials that were lost or damaged by the theft of something, means there is no coverage if the insured suffers an additional loss as a consequence of the building materials being lost or damaged in the theft of something. Thus, the true distinction the provision makes is not between stolen property and loss or damage resulting from the theft of the property. Instead, the provision distinguishes between two different types of damages resulting from theft: (1) building materials lost or damaged in the course of the theft of something, which could be building materials but does not have to be, and (2) any other loss or damage that is a consequence of the loss or damage to the building materials resulting from the theft of something.[4] Underwriters' interpretation of the policy does not conflict with this provision.

Appellant also argues that Underwriters' interpretation is contradicted by the following policy provision:

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before the loss or damage occurs:

(1) We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

. . . .

(e) Theft. . . .

Appellant argues, "By this provision, [Underwriters] excluded any damage caused by theft, but not theft itself . . . mak[ing] a distinction between a loss or damage caused by theft and the act of theft itself." We disagree. "[L]oss or damage caused by . . . Theft" includes both the loss of or damage to the item stolen and other damage caused by the theft. Underwriters' interpretation of the policy does not conflict with this provision.

We agree with Underwriters' interpretation of the policy, that the sublimit for theft applies to damage "caused by or resulting from" theft, including damage caused by thieves while committing theft. We conclude the trial court did not err by granting Underwriters' motion for summary judgment and by denying appellant's motion. We overrule appellant's two issues on appeal.

## CONCLUSION

We affirm the trial court's judgment.

damage to the building materials is expressly excluded by this provision.

4. For example, if thieves seeking to steal widgets damaged or destroyed some building materials in getting to the widgets, then the damage to the building materials would be excluded from coverage under the first sentence. If in consequence of the damage to the building materials resulting from the theft of the widgets, the insured suffered a loss because it could not perform a construction contract, then that loss would be excluded from coverage under the second sentence.