**Affirmed in part and Reverse and Remand in part; Opinion Filed March 21, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-01014-CV

### ENNIS, INC., Appellant
### V.
### DUNBROOKE APPAREL CORPORATION, LARRY RAMIREZ,
### AND MATT GRAY, Appellees

### On Appeal from County Court at Law No. 4
### Dallas County, Texas
### Trial Court Cause No. CC-09-00032-D

## OPINION

Before Justices FitzGerald, Francis, and Myers
Opinion by Justice FitzGerald

Appellant Ennis, Inc. sued appellees for tortious interference with Ennis's noncompetition agreement with David Todd Scarborough, a former officer and employee of Ennis. After ruling that California law governed the enforceability of the noncompetition agreement, the trial judge granted summary judgment in favor of appellees. Ennis appeals. We reverse.

## I. BACKGROUND

### A. Factual allegations

Ennis made the following allegations in its live pleading in the trial court. Ennis is a Texas corporation that specializes in providing preprinted business forms, apparel, and

activewear.  For example, Ennis manufactures blank t-shirts for the apparel industry.  Ennis is the sole owner of A&G, Inc., which in turn is the sole owner of Alstyle Apparel, LLC.  Ennis acquired Alstyle in 2004.

In April 2006, Ennis and David Todd Scarborough executed a written employment agreement with a term of three years.  Pursuant to this agreement, Scarborough became Ennis's "Corporate Vice President Apparel Group," as well as president of Alstyle.  Section 13 of the agreement contained a noncompetition clause that was effective during Scarborough's employment and for two years after the termination of that employment.  Section 16 of the agreement provided, "This Agreement shall be governed by and construed in accordance with the laws of the State of Texas without giving effect to any principle of conflict-of-laws that would require the application of the law of any other jurisdiction."

Ennis fired Scarborough in September 2008.  Soon thereafter, appellees Matthew Gray and Larry Ramirez, who were officers of appellee Dunbrooke Apparel Corporation, contacted Scarborough to discuss business opportunities with him.  In mid-November 2008, appellees made Scarborough an offer of employment, and he "unofficially" joined "the Dunbrooke team" around that time.  In December 2008, Scarborough facilitated some purchases from Dunbrooke by Ennis's largest client at the time.

## B.     Procedural history

In January 2009, Ennis sued Scarborough and obtained a temporary restraining order and then a temporary injunction.  Ennis later joined appellees as defendants.  In Ennis's live pleading, filed in December 2010, Ennis asserted several claims against appellees, including negligent misrepresentation, misappropriation of trade secrets, conversion, conspiracy, declaratory judgment, and tortious interference with Ennis's business and contractual relations.

The case was reached for jury trial. Jury selection began on September 28, 2011, but for some reason opening statements were delayed until October 24. On September 30, appellees filed a combined motion for judicial notice of California law and for summary judgment on Ennis's tortious-interference claims against appellees. Ennis filed a response to the judicial-notice motion on October 13. On October 17, the trial judge held a hearing solely on the judicial-notice motion. On October 21, the judge issued a letter advising the parties that he would apply California law to the "Scarborough non-compete agreement" and to Ennis's tortious-interference claims. Ennis sought mandamus relief from this ruling, which we denied. *See In re Ennis, Inc.*, No. 05-11-01426-CV, 2011 WL 5120744 (Tex. App.—Dallas Oct. 31, 2011, orig. proceeding) (mem. op.). On October 24, before opening statements, Ennis orally moved for a mistrial. During the arguments on Ennis's motion for a mistrial, Ennis dismissed all of its claims against appellees except conspiracy and tortious interference with the noncompetition and nonsolicitation clauses of Scarborough's contract. The trial judge granted the motion for mistrial and set appellees' motion for summary judgment for hearing on December 12.

A barrage of filings followed.[1] On January 17, 2012, the trial judge signed an order granting appellees' motion for summary judgment, leaving pending only Ennis's conspiracy claims against all appellees and Ennis's claims against Scarborough. The judge also signed separate orders ruling on the parties' objections to summary-judgment evidence.

---

[1] Appellees filed a supplemental brief and evidence in support of their summary-judgment motion on November 21. Ennis filed a summary-judgment response on December 5. On December 12, the day of the summary-judgment hearing, appellees filed a combined reply brief and motion to strike Ennis's summary-judgment response and evidence. That same day, Ennis filed a motion to strike appellees' reply brief and objections to appellees' summary-judgment evidence. The trial judge took everything under advisement. On December 15, Ennis filed a motion for reconsideration of the trial judge's ruling that California law applied. On January 4, 2012, Appellees filed a response and motion to strike that motion for reconsideration.

Appellees then filed a motion for summary judgment attacking Ennis's conspiracy claims. Ennis filed a response. The judge granted appellees' motion. The judgment became final when Ennis nonsuited its remaining claims against Scarborough. Ennis timely appealed.

## II. ANALYSIS

Ennis raises four issues on appeal. In its first three issues on appeal, Ennis attacks the trial judge's threshold ruling that California law governed the enforceability of Ennis's non-competition agreement with Scarborough. Ennis's first issue addresses the substantive merits of the ruling. In its second issue, Ennis complains that the trial judge misplaced the burden of proof, and in its third issue Ennis complains that the motion for judicial notice was untimely. In its fourth issue, Ennis attacks the propriety of the summary judgment on its tortious-interference claims. We need address only Ennis's first and fourth issues.

### A. Standard of review and burden of proof

Which state's law governs a particular issue is a question of law for the court to decide. *Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 204 (Tex. 2000). "But determining the state contacts to be considered by the court in making this legal determination involves a factual inquiry." *Id*. "Thus, a movant for summary judgment seeking to have the law of another state applied must satisfy its burden of proof with respect to fact questions necessary to the choice of law decision." *Id*. at 205. This entails application of the usual summary-judgment standards: the movant bears the burden of showing it is entitled to judgment as a matter of law, evidence favorable to the nonmovant will be taken as true, and we draw every reasonable inference and resolve any doubt in favor of the nonmovant. *Id*.

### B. Applicable choice-of-law rules

The question presented is whether California or Texas law governs the enforceability of the noncompetition clause in Scarborough's employment agreement with Ennis, taking into

account the contractual choice-of-law clause selecting Texas law to govern the agreement. This question is governed by section 187(2) of the *Restatement (Second) of Conflict of Laws*.[2] *See DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 678 (Tex. 1990). Under section 187(2), the law of the chosen state (Texas in this case) will be applied unless one of two exceptions applies:

(a)     the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b)     application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(2) (1971).

Section 187(2)(a) does not apply in this case because it is undisputed that Ennis is a Texas company headquartered in Texas and that Scarborough agreed to work for Ennis, thereby giving Texas a substantial relationship to the parties and the transaction. *See DeSantis*, 793 S.W.2d at 678 (Florida had a substantial relationship to the parties and the transaction because one party had its corporate offices in Florida and some of the negotiations took place there). Accordingly, we proceed with our analysis of section 187(2)(b). Under that section, the chosen law (Texas) will apply unless appellees established three elements: (1) another state (California) has a more significant relationship than Texas to the transaction and the parties under the rule set forth in section 188, (2) California has a materially greater interest than Texas in the determination of the particular issue, and (3) applying Texas law would be contrary to a fundamental policy of California. *See id.*; *Mary Kay Inc. v. Woolf*, 146 S.W.3d 813, 816 (Tex. App.—Dallas 2004, pet. denied); RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 187(2)(b),

---

[2] After this appeal was submitted, Ennis filed a motion for supplemental briefing whereby it sought to raise a different basis for challenging the trial judge's choice-of-law ruling, chapter 271 of the Texas Business and Commerce Code. We will not consider this new and belatedly raised argument. *Cf. Hunter v. PriceKubecka, PLLC*, 339 S.W.3d 795, 803 n.5 (Tex. App.—Dallas 2011, no pet.) ("[W]e do not consider arguments raised for the first time in a reply brief.").

188(1). As the summary-judgment movants, appellees bore the burden of proving as a matter of law all facts necessary to establish these three elements. *See Hughes Wood Prods.*, 18 S.W.3d at 205.

Section 188(2) lists several contacts to be considered in determining what state has the most significant relationship to the transaction and the parties. These are the place of contracting; the place of negotiation of the contract; the place of performance; the location of the subject matter of the contract; and the domicile, residence, nationality, place of incorporation, and place of business of the parties. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188(2). Those contacts are then reviewed in light of the general choice-of-law factors found in section 6, which are the needs of the interstate and international systems; the relevant policies of the forum; the relevant policies of other interested states and their relative interests in the particular issue; the protection of justified expectations; the basic policies underlying the particular field of law; certainty, predictability, and uniformity of result; and ease in the determination and application of the law to be applied. *Id*. § 6(2).

Finally, Ennis argues section 196 of the *Restatement* does not apply because the parties agreed to a choice-of-law clause. Section 196 provides:

> The validity of a contract for the rendition of services and the rights created thereby are determined, in the absence of an effective choice of law by the parties, by the local law of the state where the contract requires that the services, or a major portion of the services, be rendered, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which the [sic] event the local law of the other state will be applied.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 196. In *DeSantis*, the supreme court addressed a factual situation that focused on a contractual choice-of-law provision remarkably similar to the one before us and cited several sections of the *Restatement* including section 196. The

supreme court thereafter plainly relied on sections 187 and 188 in resolving the issue. We do likewise.

## C. Application of the law to the facts

### 1. Evidence before the trial court and facts shown thereby

Before we can apply the law to the facts, we must determine what evidence the trial judge actually considered when he ruled on appellees' motion for judicial notice of California law. The question is complicated because the motion for judicial notice was combined with a motion for partial summary judgment but the trial judge heard the motions separately and ruled on them separately. Moreover, the parties filed substantial evidence after the trial judge had already ruled on the motion for judicial notice, and they both cite post-ruling evidence in their appellate briefs. As discussed below, there is no indication that the trial judge ever reconsidered his choice-of-law ruling or granted the parties leave to file additional evidence on that issue after he ruled, so we will limit our review to the evidence that the parties filed before the trial judge granted appellees' judicial-notice motion.

Along with copies of statutes and cases, appellees attached a single evidentiary exhibit to their combined motion for judicial notice and motion for partial summary judgment: a four-page excerpt from the deposition of Ennis vice president Ronald Graham. Ennis attached four exhibits to its response, including an affidavit by Graham. Appellees filed written objections to Ennis's evidence. The trial judge made no written ruling on those objections. During the hearing, the judge expressly overruled appellees' objection that the Graham affidavit was filed untimely, and he did not rule on any of the other objections. Although the judge indicated at the end of the hearing that he would "take a look" at appellees' objections, there is no indication that the judge actually ruled on them. Appellees assert that the trial judge implicitly sustained appellees' objections by granting the motion for judicial notice, but we disagree with that

assertion. We have held that the mere granting of a summary-judgment motion does not suffice as an implicit ruling on objections. *Hogan v. J. Higgins Trucking, Inc.*, 197 S.W.3d 879, 883 (Tex. App.—Dallas 2006, no pet.). "[F]or there to be an implicit ruling, there must be some indication that the trial court ruled on the objections in the record or in the summary judgment itself, other than the mere granting of the summary judgment." *Id.*; *accord Broadnax v. Kroger Tex., L.P.*, No. 05-04-01306-CV, 2005 WL 2031783, at *4 (Tex. App.—Dallas Aug. 24, 2005, no pet.) (mem. op.). The record contains no indication that the trial judge ruled on any of appellees' objections (except for the timeliness objection the judge orally overruled), so we conclude there was no implicit ruling sustaining any of appellees' objections to Ennis's evidence.

The trial judge granted appellees' motion for judicial notice on October 21, 2011. On October 24, when the parties appeared for trial, the judge said on the record, "I'm not changing that [choice-of-law] ruling." And at the December 12 summary-judgment hearing, the judge repeated, "I've already ruled that California law applies to the case." Nevertheless, both sides filed additional evidence after October 21 that they now seek to rely on with respect to the choice-of-law issue. On December 5, Ennis filed a response to appellees' motion for summary judgment with evidence attached. The response was largely a request for the trial judge to reconsider his ruling that California law governed the enforceability of the non-competition clause in the Scarborough employment agreement. Because the trial judge had already made his choice-of-law ruling, and because there is no indication that the trial judge ever agreed to reconsider his ruling or reopen the evidence concerning the choice-of-law issue, we will not consider Ennis's evidence attached to its summary-judgment response in our review of the trial judge's prior choice-of-law ruling. *Cf. McMahan v. Greenwood*, 108 S.W.3d 467, 499–500 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (refusing to consider evidence attached to motion for new trial in reviewing previously granted summary judgment in the absence of any

indication the trial judge had considered the evidence); *Methodist Hosps. of Dallas v. Corporate Communicators, Inc.*, 806 S.W.2d 879, 883 (Tex. App.—Dallas 1991, writ denied) ("Once the trial court granted CCI summary judgment as to liability, no obligation existed for it to consider further motions on that issue from either party.").

On December 12, 2011, appellees filed a document called "Defendants' Objections to and Motion to Strike Plaintiff's (1) 'Response' to Motion for Summary Judgment, and (2) Evidence in Support Thereof, and Reply," to which appellees attached some additional evidence. There is no indication that the trial judge granted leave for appellees to file this post-ruling evidence in support of the appellees' choice-of-law motion, so we will not consider that evidence in our review of the choice-of-law ruling. *Cf. McMahan*, 108 S.W.3d at 499–500; *Methodist Hosps.*, 806 S.W.2d at 883. On December 15, 2011, Ennis filed a motion for reconsideration of the judicial-notice ruling with additional evidence attached. On January 4, 2012, appellees filed a response to that motion with a new affidavit by Scarborough attached. But Ennis never set its motion for hearing or obtained a ruling on it, so we will not consider the motion, the response, or the attached evidence in our analysis. *Cf. Unifund CCR Partners v. Smith*, No. 05-07-01449-CV, 2009 WL 2712385, at *2 (Tex. App.—Dallas Aug. 31, 2009, pet. dism'd) (mem. op.) ("To complain on appeal about the denial of [a] motion, the movant is also required to bring the motion to the trial court's attention."); *AIS Servs., LLC v. Mendez*, No. 05-07-01224-CV, 2009 WL 2622391, at *2 (Tex. App.—Dallas Aug. 27, 2009, no pet.) (mem. op.) ("[O]rdinarily the filing of a motion, without more, does not give rise to an inference that the trial court is actually aware of it.").

Thus, we will consider only the evidence attached to appellees' motion for judicial notice and the evidence attached to Ennis's October 13, 2011 response to that motion. Appellees' evidence was an excerpt from the deposition of Ronald Graham. Graham testified that when

Scarborough became president of Alstyle, he moved into a house in California that had been leased by the company. He lived in that house up to about a month before he was fired. At that time, he moved into a different house. Graham did not know whether Scarborough bought or leased the new house. Ennis filed an affidavit by Ronald Graham in which he stated that Ennis and Scarborough executed their employment agreement on April 21, 2006, and that the execution "was witnessed by Kenneth Pritchett, a member of the Ennis Board of Directors in Midlothian, Texas." Graham further stated that Scarborough frequently traveled to Ennis's corporate headquarters in Midlothian, Texas, to attend quarterly board meetings, that Scarborough had an office in the headquarters in Midlothian, and that Scarborough often performed duties as an Ennis corporate officer, such as serving as an officer of a large Nevada subsidiary of Ennis. Graham also stated that "it was always understood that Mr. Scarborough's tenure in California was temporary and that he would move to Texas and work out of the Ennis corporate office in Midlothian." According to Graham, Scarborough was fired on September 17, 2008, in a meeting at Ennis's headquarters in Midlothian.

Ennis's remaining evidence consists of (1) Scarborough's employment agreement with Ennis, (2) three corporate resolutions by Ennis Acquisitions, Inc., a Nevada corporation, signed by Scarborough in 2005, 2006, and 2007, and (3) a May 13, 2009 letter by Matt Gray, chief operating office of Dunbrooke, outlining Scarborough's prospective business relationship with Dunbrooke. The employment agreement does not state where the parties expected Scarborough to perform his duties under the agreement as an Ennis vice president and as president of Alstyle. It provides that any notices to Scarborough called for by the agreement will be sent to him at an Alstyle address in Anaheim, California.

### 2. Application of the *Restatement*'s most-significant-relationship test

Next, we determine whether the trial judge correctly ruled that California has a more significant relationship than Texas with the parties and the transaction by evaluating the factors set forth in section 188(2) of the *Restatement*. Again, because we are reviewing the choice-of-law decision in the context of a summary judgment, appellees bore the burden of proving the necessary facts as a matter of law. *Hughes Wood Prods.*, 18 S.W.3d at 205.

The first factor is the place of contracting. Appellees filed no evidence of this factor. The Scarborough employment agreement does not recite the place of contracting. The Graham affidavit filed by Ennis contains the following statements: "On April 21, 2006, Ennis and Scarborough entered into and executed an Employment Agreement. The signing of the Employment Agreement was witnessed by Kenneth Pritchett, a member of the Ennis Board of Directors in Midlothian, Texas." These statements permit a reasonable inference that both Ennis and Scarborough executed the agreement in Texas. Because we are reviewing summary judgment against Ennis, we draw this reasonable inference in Ennis's favor. The first factor favors Texas.

The second factor is where the contract was negotiated. Appellees adduced no evidence of this factor. Ennis adduced no direct evidence of this factor. Ennis's evidence shows that Ennis is a Texas corporation with its headquarters in Midlothian, Texas. This evidence gives rise to a reasonable inference that Ennis conducted its part of the negotiations, if any, in Texas, but there is no evidence where Scarborough was during any negotiations. Appellees failed to establish that this factor favors California. If anything, it favors Texas.

The third and most important factor is the place of performance. *See DeSantis*, 793 S.W.2d at 679 (stating that this factor is generally "conclusive" in the context of personal-services contracts); *see also* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 196. Appellees'

evidence shows that Scarborough resided in California, in a company-leased home, for most of his tenure with Ennis, and that Scarborough moved to a new house in California about a month before he was fired. Ennis's evidence does not show where Scarborough performed most of his services, but Ennis's evidence does show that Scarborough had an office in Texas and frequently traveled to Texas. Ennis's evidence also shows that Scarborough performed services for a Nevada subsidiary of Ennis, but it does not show where those services were performed. At most, the evidence gives rise to an inference that Scarborough performed some, but not all, of his services in California. Because this case comes to us on summary judgment, this does not satisfy appellees' burden of proof. A motion for summary judgment that depends on "a mere ground of inference" should not be granted. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex. 1965); *accord State v. Durham*, 860 S.W.2d 63, 66 (Tex. 1993) (stating that summary judgment could not be based on inferences from the evidence urged by movants). Appellees failed to establish that the third factor weighs in favor of California.

The fourth factor is the location of the subject matter of the contract. The comments to section 188 of the *Restatement* suggest that this factor is significant when a contract involves "a specific physical thing, such as land or a chattel, or affords protection against a localized risk, such as the dishonesty of an employee in a fixed place of employment." *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 cmt. e. Scarborough's employment agreement is not similar to the contracts listed in comment e. The principal "subject matter" of the agreement is Scarborough's services, which the agreement does not tie to any fixed location. Similarly, the noncompetition clause is not tied or limited to any particular state or states. Appellees failed to establish that the fourth factor weighs in favor of California.

The fifth factor encompasses the domicile, residence, nationality, place of incorporation, and place of business of the parties. The significance of these contacts depends largely on the

issue involved and the extent to which these contacts can be grouped with other contacts. *Id.* The evidence shows that Scarborough lived in California for the duration of his employment with Ennis. The evidence further shows that Ennis is a Texas corporation with its headquarters in Midlothian, Texas. The evidence also shows that Ennis held quarterly board meetings in Midlothian, Texas. Thus, the evidence pertinent to the fifth factor is equivocal, because the parties were based in different states for the duration of Scarborough's employment relationship. We conclude appellees failed to establish that the fifth factor weighs in favor of California.

From the foregoing, it is apparent that appellees did not carry their summary-judgment burden of proving the facts necessary to justify the trial judge's choice-of-law ruling. None of section 188(2) factors supports the conclusion that California has a more significant relationship to the parties and the transaction than Texas. Accordingly, appellees failed to establish the first element of the section 187(2)(b) exception to the rule that the parties' contractual choice of law should govern. We need not consider the other two elements of the section 187(2)(b) exception. The trial judge erred by applying California law to Scarborough's employment agreement in the context of appellees' motion for summary judgment.

## D. Summary judgment

In its fourth issue on appeal, Ennis argues that the trial judge erred by granting summary judgment on Ennis's tortious-interference claims against appellees. Ennis contends, correctly, that the sole ground for summary judgment raised by appellees and considered by the trial judge was that Scarborough's employment agreement with Ennis was unenforceable under California law and therefore, as a matter of law, could not support a tortious-interference claim. Because the trial judge erred by ruling that California law governed the enforceability of the agreement for purposes of appellees' summary-judgment motion, it follows that the judge also erred by granting the summary-judgment motion.

–13–

### III.   CONCLUSION

For the foregoing reasons, we reverse the trial judge's January 17, 2012 order granting appellees' motion for summary judgment.  We remand the case for further proceedings on Ennis's tortious-interference claims against appellees.  We express no opinion as to which state's law should be applied to the issues in this case in those further proceedings.  *See Hughes Wood Prods.*, 18 S.W.3d at 209 ("We leave open the question of which state's law the trial court should apply to the particular substantive issues to be resolved below.").  We affirm the judgment in all other respects.


121014F.P05                                             /Kerry P. FitzGerald/
                                                        KERRY P. FITZGERALD
                                                        JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ENNIS, INC., Appellant

No. 05-12-01014-CV     V.

DUNBROOKE APPAREL
CORPORATION, LARRY RAMIREZ,
AND MATT GRAY, Appellees

On Appeal from the County Court at Law
No. 4, Dallas County, Texas
Trial Court Cause No. CC-09-00032-D.
Opinion delivered by Justice FitzGerald.
Justices Francis and Myers participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** the trial court's January 17, 2012 order granting appellees' motion for summary judgment.  We **REMAND** the case for further proceedings on appellant Ennis, Inc.'s claims for tortious interference with business and contractual relations. In all other respects, we **AFFIRM** the trial court's judgment.

It is **ORDERED** that appellant Ennis, Inc. recover its costs of this appeal from appellees Dunbrooke Apparel Corporation, Larry Ramirez, and Matt Gray.

Judgment entered March 21, 2014

/Kerry P. FitzGerald/
KERRY P. FITZGERALD
JUSTICE

–15–