**REVERSED AND REMANDED and Opinion Filed November 30, 2022**



In The
# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-21-00863-CV

## C3 VENTURE FLINT, LLC (TEXAS), C3 VENTURE FLINT, LLC (MICHIGAN), AND C3 PH, LLC, Appellants
## V.
## BLUE DOG HOLDINGS, INC., Appellee

### On Appeal from the 162nd Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. DC-20-08434

## MEMORANDUM OPINION

Before Justices Myers, Pedersen, III, and Garcia
Opinion by Justice Garcia

Appellee Blue Dog Holdings, Inc. sued appellants for failing to pay a debt, and it won its case on summary judgment. Appellants argue that the trial judge erred by granting appellee's summary-judgment motion and denying appellants' summary-judgment motion. Concluding that neither side was entitled to summary judgment, we reverse and remand.

## I. BACKGROUND

### A. Factual Allegations

In its live petition, appellee Blue Dog Holdings, Inc. ("Blue Dog") alleged that it and one other entity, Green Gambreezzi, LLC ("Gambreezzi"), loaned appellants $700,000 under a Loan and Investment Agreement ("Agreement"). Pursuant to the Agreement, Blue Dog and Gambreezzi also performed certain services for appellants. Appellants promised to pay Blue Dog $770,000 by a certain date. Appellants failed to pay, and the entire amount remained due and owing when Blue Dog filed this lawsuit.

### B. Procedural History

Blue Dog sued appellants, asserting a single claim entitled "Suit on a Note."[1] Appellants answered.

Blue Dog filed a summary-judgment motion solely against appellant "C3 Venture Flint LLC," and that appellant filed a response.[2] It appears that this summary-judgment motion was never considered by the trial judge.

---

[1] In their trial-court filings, both sides often referred to the Agreement as a note.

[2] At this point we note that appellants are not named consistently in the trial-court filings. Appellant C3 PH LLC is generally identified without a comma before "LLC," but appellants' joint notice of appeal lists that appellant as "C3 PH, LLC."

The record is more confusing as to the other two appellants. It appears that they have the same name, "C3 Venture Flint LLC," but one is a Michigan limited liability company and the other is a Texas limited liability company. With respect to the Michigan company, Blue Dog's filings generally omit the space between "C3" and "Venture," but appellants' filings generally include the space. Appellants' summary-judgment motion refers to these two parties as "C3 Venture Flint, LLC (TX)" and "C3 Venture Flint, LLC (MI)," but their notice of appeal refers to them as "C3 Venture Flint, LLC (Texas)" and "C3 Venture Flint, LLC (Michigan)." When we must refer to a specific appellant, we refer to the Michigan "C3 Venture" company as C3MI, the Texas "C3 Venture" company as C3TX, and the other appellant as C3PH.

–2–

Blue Dog later filed a first amended petition, which added alternative claims such as quantum meruit. This was Blue Dog's live pleading at the time of judgment.

Appellants filed amended answers. Their live answers included verified denials that Blue Dog had capacity to sue on the Agreement because Blue Dog was not a party to the Agreement. Rather, the Agreement named Blue Dog Holdings, LLC, not Blue Dog Holdings, Inc., as a party. Appellants also asserted the affirmative defenses of waiver, quasi-estoppel, and laches.

Appellants filed a traditional motion for summary judgment on the entire case, arguing that Blue Dog could not recover because (1) Blue Dog was not a signatory of the Agreement, (2) no amount was due and owing, and (3) appellants conclusively established all of their affirmative defenses.

Blue Dog filed a second summary-judgment motion, this time seeking judgment on its note claim against all three appellants. Appellants did not file a response to this motion.

The docket sheet suggests that the trial judge held a hearing on each side's summary-judgment motion, but there is no reporter's record of that hearing. The trial judge signed a final judgment that granted Blue Dog's motion and awarded Blue Dog damages, interest, and attorney's fees against appellants. The judgment also denied "all relief not expressly granted," and it purported to dispose of all claims and parties.

Appellants timely appealed.

## II. ISSUES PRESENTED

Appellants assert two issues on appeal.

First, they argue that the trial judge erred by denying appellants' summary-judgment motion on the affirmative defenses of quasi-estoppel and laches.

Second, they argue that the trial judge erred by granting Blue Dog's summary-judgment motion.

We address appellants' second issue first.

## III. ISSUE TWO: WHETHER BLUE DOG WAS ENTITLED TO SUMMARY JUDGMENT

### A. Standard and Scope of Review

We review a summary judgment de novo. *Trial v. Dragon*, 593 S.W.3d 313, 316 (Tex. 2019).

When we review a summary judgment in favor of a claimant, we determine whether the claimant established every element of its claim as a matter of law. *Alexander v. Wilmington Sav. Fund Soc'y, FSB*, 555 S.W.3d 297, 299 (Tex. App.—Dallas 2018, no pet.). We consider the evidence in the light most favorable to the nonmovant, indulge every reasonable inference in favor of the nonmovant, and resolve any doubts against the movant. *Id*.

If the nonmovant relies on an affirmative defense to defeat summary judgment, it must come forward with evidence sufficient to raise a genuine fact issue on each element of the defense. *TrueStar Petroleum Corp. v. Eagle Oil & Gas Co.*, 323 S.W.3d 316, 319 (Tex. App.—Dallas 2010, no pet.). We take evidence favorable

–4–

to the nonmovant as true, and we draw every reasonable inference from the evidence in the nonmovant's favor. *Id*.

When both sides move for summary judgment, each side bears the burden of establishing that it is entitled to judgment as a matter of law, and neither side can prevail because the other side has failed to carry its burden. *SA-OMAX 2007, L.P. v. Certain Underwriters at Lloyd's, London*, 374 S.W.3d 594, 597 (Tex. App.—Dallas 2012, no pet.). We consider all the evidence accompanying both motions in determining whether either side's motion should have been granted. *Id*. When the trial judge grants one motion and denies the other, we determine all questions presented. *Id*. We may affirm the trial court's summary judgment, reverse and render judgment for the other side if appropriate, or reverse and remand if neither side carried its summary-judgment burden. *Dallas Cent. Appraisal Dist. v. Mission Aire IV, L.P.*, 279 S.W.3d 471, 474 (Tex. App.—Dallas 2009, pet. denied).

In this case, the final judgment grants Blue Dog's summary-judgment motion but does not mention appellants' summary-judgment motion. In its appellee's brief, Blue Dog argues that appellants failed to obtain a trial-court ruling on their motion. But, as noted above, the docket sheet seems to indicate that the cross-motions were heard together. Moreover, the final judgment recites that the trial judge considered Blue Dog's motion, "all related briefing, all admissible evidence, and any argument of counsel," which could encompass appellants' motion. Finally, at oral argument Blue Dog conceded that the trial judge denied appellants' motion. We accept that

concession and conclude that the judgment implicitly denied appellants' summary-judgment motion. *See* TEX. R. APP. P. 33.1(a)(2)(A) (implicit ruling suffices to preserve error). Accordingly, the evidence attached to appellants' motion is part of the summary-judgment record for both motions. *See SA-OMAX 2007, L.P.*, 374 S.W.3d at 597.

## B. Applicable Law

In their summary-judgment papers, the parties consistently treated the Agreement as a note, and appellants do not challenge that characterization on appeal. Accordingly, for purposes of this appeal, we assume that the Agreement is a note. *See Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 782 (Tex. 2020) ("A court of appeals may not reverse a trial court judgment on a ground not raised [by the appellant].").

The elements of a claim for breach of a promissory note are (1) a note exists, (2) the plaintiff is the legal owner and holder of the note, (3) the defendant is the maker of the note, and (4) a certain balance is due and owing on the note. *See Levitin v. Michael Grp., L.L.C.*, 277 S.W.3d 121, 123 (Tex. App.—Dallas 2009, no pet.).

## C. The Summary-Judgment Evidence

We summarize the evidence with an eye to the contested issues on appeal—(1) whether Blue Dog conclusively proved itself to be the owner and holder of the Agreement and (2) whether appellants raised a genuine fact issue on any of their affirmative defenses.

## 1.    Background Facts

Appellants filed the declaration of Robert Schaffer, who explained the genesis of the transaction as follows. In the 2010s, Schaffer was investing in Michigan real estate. He worked with a real-estate broker named Robert Waun. At some point he created the first C3 entity, C3MI, which was going to focus on recycling and renovating underutilized properties in Flint, Michigan.

In 2016, Schaffer discussed the opportunities in Flint with a friend, Dallas attorney Christopher A. Payne. Payne had two clients who wanted to get involved in the Flint opportunities, namely Dr. Tom Kenjarski, M.D. and Dr. Joel Ciarochi, M.D. The doctors agreed to invest $700,000 in C3MI in return for a 10% ownership interest in all C3-related entities. To accomplish this goal, Waun and the doctors negotiated the Agreement.

## 2.    The Agreement

The first paragraph of the Agreement identifies the parties:

> This Loan and Investment Agreement is entered into effective as of the 29th day of August 2016 between C3 PH, LLC, a Michigan Limited Liability Company (C3PH), C3Venture Flint, LLC, a Michigan Limited Liability Company (C3MI) and C3 Venture Flint, LLC a Texas Series Limited Liability Company (C3TX) as Borrowers and Blue Dog Holdings, LLC a Texas Limited Liability Company (Blue Dog) and Green Gambreezzi, LLC a Texas Limited Liability Company[ ](Gambreezzi) as the Lenders as set forth below.

Although the Agreement calls all three appellants "Borrowers," the parties agreed that C3PH would actually receive the money:

1. Blue Dog and Gambreezzi each agree to loan C3PH the sum of [$350,000] for a total of Seven Hundred Thousand and No/100 Dollars ($700,000.00) ("the Loan Amount") for a period of thirty (30) days from September 1, 2016.

The Agreement provides that "Blue Dog" (previously defined to mean Blue Dog Holdings, LLC) would receive the repayment:

2. The full Loan Amount shall be repaid to Blue Dog on or before October 1, 2016, together with a consulting fee of [$70,000] ("the Consulting Fee") for consulting services provided by Blue Dog and/or its representatives.

The Agreement provides that the lenders would then reinvest the loaned funds in return for equity in C3TX:

3. Upon repayment of the Loan Amount together with the Consulting Fee on or before October 1, 2016, Blue Dog and Gambreezzi agree to utilize the entire sum of [$770,000] to acquire a ten percent (10%) interest in C3TX ("the C3 Equity Interest"). Such C3Equity Interest shall be split equally between Blue Dog and Gambreezzi so that each such entity has a five percent (5%) interest exclusive of the other.

Kenjarski signed the Agreement on behalf of "Blue Dog Holdings, LLC, a Texas Limited Liability Company" as its "Member/Manager/Director." Ciarochi signed it on behalf of Gambreezzi as its "Member/Manager/Director."

### 3. The Loan and the Fate of the C3 Enterprise

Regarding the parties' performance under the Agreement, the summary-judgment evidence includes Schaffer's deposition testimony that "Blue Dog and Gambreezzi" each loaned $350,000 to C3PH. Kenjarski stated in a declaration that appellants "defaulted on the [Agreement] by failing to pay as agreed. The entire

unpaid balance of the [Agreement] remains due and owing." Schaffer agreed in his deposition that "C3 in fact did not repay the loan amount."

As for the C3 enterprise as whole, the summary-judgment evidence indicates that it was unsuccessful. According to Schaffer, C3MI opened its operations in Flint, Michigan, and Waun hired over 100 people. However, the accounting and bookkeeping employees for the C3 entities provided poor service, and Wuan mismanaged the business's affairs. Kenjarksi and Ciarochi proposed that they be placed in charge of accounting for all C3 entities, and Waun and Schaffer agreed that this was a good idea. According to Schaffer's declaration, "[a]fter about a year of action, C3MI was in need of money each month to meet payroll, land contract payments as well as other cash needs. In November 2017, Mr. Waun wanted to resign as CEO of all the C3 entities and claimed that C3MI was not going to make it." Moreover, Kenjarski and Ciarochi "offered no real operational support," and Schaffer hired a new local accounting service to document the companies' bills. Eventually, Schaffer had to lay off almost all employees of the C3 entities, and he said in his declaration that "C3MI is not able to continue its affairs."

### 4. Evidence Regarding Whether Appellee Blue Dog Holdings, Inc. Was Entitled to Payment Under the Agreement

Appellants maintain that the evidence raises a genuine fact issue whether appellee Blue Dog Holdings, Inc. is an owner or holder of the Agreement. They rely on the following evidence:

- An August 29, 2016 email from attorney Christopher Payne to Kenjarski, Ciarochi, Schaffer, and Wuan that covered a draft of the Agreement. That draft named Blue Dog Holdings, LLC as the party entitled to repayment.

- An August 30, 2016 email from Payne to the same four recipients that covered the final version of the Agreement, which again named Blue Dog Holdings, LLC as the party entitled to repayment.

- An August 30, 2016 email from Kenjarski to someone named Shannon Bass in which Kenjarski said, "I approve $300,000 to be transferred from Blue Dog Holdings LLC."

- A September 28, 2016 email from Kenjarski to Shannon Bass with a subject line reading "Re: Wiring Instructions" and text saying, "green gambreezzi, LLC for joel" and "blue dog holdings, LLC for tom."

- A June 3, 2019 letter that Kenjarski emailed to Schaffer with copies to Ciarochi and Payne. In this letter, Kenjarksi wrote, "As you know, Blue Dog Holdings, LLC and Green Gambreezzi, LLC, which are wholly owned entities belonging to me and Joel, each loaned $350,000 to [appellants] via the Loan and Investment Agreement signed on August 30, 2016." He went on to propose rescinding the Agreement if Schaffer returned the $700,000.

- Schaffer's declaration testimony that after the Agreement was executed he never agreed to any assignment of interest from Blue Dog Holdings, LLC to Blue Dog Holdings, Inc. on behalf of C3TX, C3MI, and/or C3PH. To his knowledge, no party to the Agreement ever proposed such an assignment.

We agree with appellants that a jury could reasonably infer from this evidence that Blue Dog Holdings, LLC was the entity entitled to repayment under the Agreement and that it was the owner and holder of the Agreement to the extent the Agreement constitutes a note.

Blue Dog, however, argues that it is nevertheless a proper party to enforce the Agreement for several reasons:

1. Blue Dog Holdings, LLC does not exist.

2. Blue Dog Holdings, LLC's appearance in the Agreement resulted from a drafting error.

3. Blue Dog Holdings, Inc. actually sent appellants the money pursuant to the Agreement.

4. Certain K-1 tax forms prepared by appellants list Blue Dog Holdings, Inc., not Blue Dog Holdings, LLC, as a partner in C3 Venture Flint LLC.

We examine each proposition in turn.

To prove that Blue Dog Holdings, LLC does not exist, Blue Dog relies solely on one page of evidence, which it represents is a printout from the Texas Secretary of State's webpage. The pertinent portion of that printout is this:



–11–

We disagree that this document conclusively proves either that Blue Dog Holdings, LLC does not exist as a Texas business entity or that it did not exist as a Texas business entity when the Agreement was executed. The document does not state those facts; rather, Blue Dog asks us to infer them from the absence of Blue Dog Holdings, LLC from the ten-item list shown. We cannot, for two reasons. First, we generally do not draw inferences from summary-judgment evidence in favor of the movant. *See, e.g.*, *State v. Durham*, 860 S.W.2d 63, 66 (Tex. 1993); *Ennis, Inc. v. Dunbrooke Apparel Corp.*, 427 S.W.3d 527, 535 (Tex. App.—Dallas 2014, no pet.). Here, the inference Blue Dog would have us draw is not one that a reasonable juror would be compelled to make. The document indicates that a search for "blue dog holdings" generated 2,013 results, of which only ten are shown. Thus, "Blue Dog Holdings, LLC" could be among the 2,003 results not shown. Second, Kenjarski repeatedly referred to Blue Dog as "Blue Dog Holdings, LLC" in his pre-litigation correspondence. This is some evidence that Blue Dog Holdings, LLC existed.

Blue Dog next asserts that the appearance of "Blue Dog Holdings, LLC" in the Agreement was necessarily a scrivener's error because Blue Dog Holdings, LLC does not exist. Because we conclude that the latter premise is not conclusively proved, we further conclude that Blue Dog's "scrivener's error" theory is also not conclusively proved.

Third, Blue Dog asserts that it, and not Blue Dog Holdings, LLC, sent the money to appellants pursuant to the Agreement. For support, it relies on two

passages from Schaffer's deposition. But neither passage conclusively proves Blue Dog's assertion. The first is this:

> Q. Do you see where [the Agreement] says, "Blue Dog and Gambreezzi each agree to loan C3 PH the sum of $350,000" do you see that?
>
> A. Yes.
>
> Q. Did that in fact happen?
>
> A. Yes.

But because the Agreement defines "Blue Dog" to mean "Blue Dog Holdings, LLC a Texas Limited Liability Company," Schaffer testimony's reasonably means that Blue Dog Holdings, LLC actually loaned C3PH the money. The second passage is this:

> Q. Yeah. So do you think—let's talk about Blue Dog Inc. versus Blue Dog, LLC, which one do you think is the lender under the note?
>
> A. Well, the note says LLC. But I know—I know it is on the tax reports that I received that there was Inc.

Schaffer's testimony here is equivocal and does not conclusively establish that appellee Blue Dog Holdings, Inc. actually furnished the money that was loaned under the Agreement.

Finally, Blue Dog argues that the evidence conclusively proves it is the owner and holder of the Agreement because it shows that appellants issued three K-1 federal tax forms that listed Blue Dog Holdings, Inc. as a partner in "C3 Venture Flint, LLC." We reject this argument for two reasons. First, it is factually incorrect.

The K-1s actually identify "Blue Dog Holding, Inc" and not "Blue Dog Holdings, Inc." as a partner in C3 Venture Flint, LLC.[3] Thus, they do not establish that appellee was in fact a partner in C3 Venture Flint, LLC. Second, the K-1s say nothing about the loan made under the Agreement. Essentially, Blue Dog urges us to draw a conclusive inference that if the K-1s identified Blue Dog as a C3 owner, Blue Dog must have been the entity that furnished the money loaned under the Agreement. Although this may be a possible inference, it is not one we can draw in Blue Dog's favor given its status as the summary-judgment movant.[4] *See, e.g.*, *Durham*, 860 S.W.2d at 66; *Ennis, Inc.*, 427 S.W.3d at 535.

## D. Conclusion

We agree with appellants that Blue Dog did not conclusively establish that it is the owner of, the holder of, or a party entitled to repayment under the Agreement.[5] Accordingly, we sustain appellants' second issue and hold that the trial judge erred by granting Blue Dog's summary-judgment motion. In light of our holding, we need

---

[3] The K-1s also appear to state that "Blue Dog Holding, Inc." is a partnership, not a corporation.

[4] Blue Dog does not mention a sentence in Kenjarski's declaration that states, "Blue Dog is the legal owner and holder of the Note and no rights or obligations under the Note have been assigned to any third party." Regardless, the other evidence discussed above suffices to raise a genuine fact issue as to Blue Dog's right to recover on the Agreement.

[5] Appellants also argue that Blue Dog's position fails as a legal matter because the nonexistence of Blue Dog Holdings, LLC would make Kenjarski, not Blue Dog Holdings, Inc., a party to the Agreement. *See A to Z Rental Ctr. v. Burris*, 714 S.W.2d 433, 436 (Tex. App.—Austin 1986, writ ref'd n.r.e.) (per curiam) ("[O]ne who contracts as an agent in the name of a nonexistent or fictitious principal, or a principal without legal status or existence, renders himself personally liable on those contracts."). We need not address this argument.

–14–

not consider whether appellants successfully defeated Blue Dog's summary-judgment motion via one of their affirmative defenses.

## IV.  ISSUE ONE: WHETHER APPELLANTS WERE ENTITLED TO SUMMARY JUDGMENT

In their first issue, appellants contend that they were entitled to summary judgment based on their affirmative defenses of quasi-estoppel and laches.

### A.  Standard of Review

When a defendant seeks summary judgment based on an affirmative defense, it bears the burden of conclusively proving every essential element of the defense. *Alexander v. Wilmington Sav. Fund Soc'y, FSB*, 555 S.W.3d 297, 299 (Tex. App.—Dallas 2018, no pet.). We take evidence favorable to the nonmovant as true, and we indulge every reasonable inference and resolve every doubt in the nonmovant's favor. *Id*. A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Id*.

### B.  Quasi-estoppel

#### 1.  Applicable Law

Quasi-estoppel is a term applied to certain legal bars such as ratification, election, acquiescence, or acceptance of benefits. *Forney 921 Lot Dev. Partners I, L.P. v. Paul Taylor Homes, Ltd.*, 349 S.W.3d 258, 268 (Tex. App.—Dallas 2011, pet. denied). The doctrine precludes a person from asserting, to another's disadvantage, a right inconsistent with a position previously taken. *Id*. It applies when it would be unconscionable to allow someone to maintain a position

–15–

inconsistent with one in which he or she acquiesced. *Id*. Unlike equitable estoppel, quasi-estoppel does not require a showing of a false representation or detrimental reliance. *Id*.

### 2. Application of the Law to the Facts

Appellants' theory is that Blue Dog forwent repayment under the Agreement and accepted an equity ownership interest in the C3 enterprise. They contend that allowing Blue Dog to obtain repayment under the Agreement's original terms would permit an unconscionable change of positions by Blue Dog to appellants' detriment.

In support of their argument, appellants assert that they conclusively proved that Blue Dog and Gambreezzi received an equity interest in appellants through the following evidence. First, they point to K-1 tax forms for 2016, 2017, and 2018 showing that Blue Dog and Gambreezzi were partners in a "Partnership" called "C3 Venture Flint, LLC" with a Michigan address. Those forms also purportedly show that Blue Dog and Gambreezzi (1) represented to the IRS that they were owners of "the C3 entities" and (2) took large tax-loss deductions in 2016 and 2017 as owners of those entities.

Appellants also rely on a June 2019 letter from Kenjarski to Schaffer in which he proposed the following:

> [T]he simplest solution would be to rescind the Loan and Investment Agreement. You return our $700,000.00, we forego any C3 claim(s), you and the remaining members of C3 take all of the tax losses for 2018. If you are able to send us $700,000.00 by July 1, 2019, Joel and I are willing to waive the 10% Consulting Fee. However, if you are unwilling to rescind the Loan and Investment Agreement and return our

–16–

$700,000.00 by July 1, 2019, we will be forced to examine other alternatives.

According to appellants, this letter is an admission that Kenjarski and Ciarochi received an equity interest in the C3 entities and took advantage of that status to declare the tax losses in 2016 and 2017.

We disagree that the foregoing evidence conclusively proves the elements of quasi-estoppel by acceptance of benefits. Appellants themselves aver that C3MI—not Blue Dog—issued the K-1 forms. Thus, absent additional evidence that Blue Dog actually used the K-1 forms to secure some benefit, the K-1 forms are not evidence that *Blue Dog* took a position inconsistent with its current claim to be a lender rather than an equity owner. Appellants cite no evidence other than the June 2019 Kenjarski letter. But that letter does not state that Blue Dog was an equity owner or that Blue Dog claimed C3's business losses in 2016 and 2017. Although Kenjarski's offer to let C3's members claim the tax losses for 2018 arguably supports an inference that Blue Dog took the tax losses in prior years, we cannot draw that inference in favor of appellants in their capacity as summary-judgment movants.[6] *See, e.g.*, *Durham*, 860 S.W.2d at 66; *Ennis, Inc.*, 427 S.W.3d at 535.

---

[6] The record also contains a one-page document apparently prepared by a CPA in September 2020 that seems to indicate that "blue dog" received "K-1 pass through losses" from "C3 Venture Flint, LLC" in 2016, 2017, 2018, and 2019. Appellants do not cite this document in their quasi-estoppel argument. Even if they did, the document does not conclusively establish any fact against appellee Blue Dog Holdings, Inc. because (1) the phrase "blue dog" is ambiguous in the context of this case; (2) near the top of the page, the document refers to "Blue Dog Holding, LLC"; and (3) the document does not mention Blue Dog Holdings, Inc.

Appellants also argue that quasi-estoppel is shown because Blue Dog actively participated in the management and operations of the C3 entities for several years before seeking repayment of the loan. But they cite no evidence to support this contention, and Schaffer's declaration says that Kenjarski and Ciarochi "offered no real operational support." Moreover, appellants do not explain why such participation, even if proved, would conclusively show that Blue Dog was an equity owner of C3 entities rather than a lender to them. We reject appellants' argument.

Finally, appellants assert that Blue Dog's summary-judgment response failed to deny that Blue Dog received an ownership interest in the C3 entities and received tax savings accordingly. But "[i]n our summary judgment practice, the opponent's silence never improves the quality of a movant's evidence." *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex. 1972).

We reject appellants' contention that they were entitled to summary judgment based on quasi-estoppel.

## C. Laches

### 1. Applicable Law

A party asserting the defense of laches must show both an unreasonable delay and harm resulting from the delay. *In re Marriage of Stroud*, 376 S.W.3d 346, 357 (Tex. App.—Dallas 2012, pet. denied). Generally, laches will not bar a suit filed within the limitations period unless there is some element of estoppel or such extraordinary circumstances as would render it inequitable to enforce the claimant's

right after a delay. *Id*. Laches will not bar an action filed within limitations unless allowing the action would work a grave injustice. *Id*.

### 2.    Application of the Law to the Facts

Appellants concede that Blue Dog filed suit within the statute of limitations. They argue nonetheless that Blue Dog unreasonably delayed in filing suit by waiting almost four years after the repayment of the loan was due. Appellants further argue that it would be inequitable to allow Blue Dog to enforce the Agreement after the delay for the same reasons they assert under their quasi-estoppel argument—i.e., Blue Dog obtained an equity interest in the C3 enterprise, Blue Dog represented that fact to the IRS, Blue Dog benefited from its ownership by taking tax deductions, and Blue Dog, Kenjarski, and Ciarochi actively participated in C3's management and operations for several years.

We have already concluded in our quasi-estoppel analysis above that appellants did not conclusively prove that Blue Dog's claim is barred by estoppel. For the same reasons, we conclude that appellants did not conclusively prove that allowing Blue Dog to press its claims would be inequitable or work a grave injustice to appellants. Thus, appellants were not entitled to summary judgment based on laches.

### D.    Conclusion

For the foregoing reasons, we overrule appellants' first issue on appeal.

## V.    DISPOSITION

We reverse the trial court's judgment and remand the case for further proceedings consistent with this opinion.

/Dennise Garcia/
DENNISE GARCIA
JUSTICE

210863F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

C3 VENTURE FLINT, LLC
(TEXAS), C3 VENTURE FLINT,
LLC (MICHIGAN), AND C3 PH,
LLC, Appellants

No. 05-21-00863-CV     V.

BLUE DOG HOLDINGS, INC.,
Appellee

On Appeal from the 162nd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-20-08434.
Opinion delivered by Justice Garcia.
Justices Myers and Pedersen, III
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent with the opinion.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 30th day of November 2022.